**STATE of Minnesota, Respondent,**

v.

**Trinidad GARCIA, Appellant.**

**No. C4–91–921.**

Court of Appeals of Minnesota.

Feb. 18, 1992.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Darrell C. Hill, Asst. County Atty., St. Paul, for respondent.

Joy D. Bartscher, Neighborhood Justice Center, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an order of contempt where the trial court found appellant in direct contempt and summarily punished him. We reverse and remand for further proceedings.

## FACTS

Appellant Trinidad Garcia was originally charged with theft of a motor vehicle in violation of Minn.Stat. § 609.52, subds. 2(17) and 3(3)(d)(vi) (1990). Pursuant to a plea agreement, he pled guilty to that offense on November 16, 1990. The plea agreement included a stay of imposition of sentence with up to five years probation and community service in lieu of jail time. Appellant was released pending sentencing, which was scheduled for February 6, 1991.

At the sentencing hearing defense counsel requested that the trial court consider staying the imposition of probation to a probation officer and instead, place appellant on probation to the court. This request was based on appellant's interest in "entering into the service" and the fact appellant was "lined up" to go into the service. The following are excerpts from the February 6 sentencing hearing:

> *Defense counsel:* I had a chance to speak with probation about this case. Mr. Garcia is interested in entering the service and in fact is lined up to go to which Air Force base?
>
> *Defendant:* I don't know which one on the 27th.
>
> *Defense counsel:* On the 27th of this month he's arranged to enter into the Air Force.

\*    \*    \*    \*    \*    \*

> *Defendant:* I have already taken the test for the military out on University

and I took that about six months ago. I was going to go through it before I was on this but they told me to wait to get off juvenile probation. Currently I'm enlisted in the Army, all they have to do is give me the physical and do whatever they have to do.

*The Court:* You have signed the papers but the official act of being inducted into the Army has not taken place yet?

*Defendant:* No, Your Honor.

*Defense counsel:* [the court should allow defendant to] attempt within the next two or three weeks to get whatever community service done [that] the Court may impose and * * * attempt to get restitution paid prior to that date and then be allowed enlist on the 27th.

*The Court:* What's your actual date you think you are going to be going into the service?

*Defendant:* I'm supposed to visit the Air Force base the 27th and take the physical. From there it should be any time from the 27th on.

*The Court:* What Air Force base are you supposed to visit?

*Defendant:* I don't know, my sergeant is Grant Johnson on University Avenue, that's the recruiting service I'm going through.

*The Court:* I'd like [to get this taken care of] as soon as possible so that he can get out [of] here as soon as possible and be gone on the 27th in [the] event he can get things lined up with the Air Force recruiter.

Appellant was not under oath at the sentencing hearing.

The state opposed placing appellant on probation to the court, arguing that it was contrary to the plea agreement. However, the court accepted appellant's request and sentenced him as follows: 13 months to community corrections, imposition stayed, and probation to the court for five years on condition he serve 15 days in the Ramsey County workhouse (execution stayed until February 11) and pay restitution. The trial court also stated:

If [appellant's] unable to get into the service or if as was mentioned earlier, he washes out of the service for any reason, he's to understand clearly that he's on probation to the court and subject to the probation supervision.

On the next day, February 7, 1991, the trial court received a letter memorandum from probation officer Bruce A. Harden. The memorandum concerned the statements appellant made at his sentencing hearing the day before regarding entering the service. The memorandum states in part:

I was able to talk with Sergeant Grant Johnson, United States Army Military Recruiter who stated that he was the person that [appellant] had talked to with regard to entrance into the Unite States Army Reserve. *Sergeant Johnson stated that [appellant] had never been in his office but that he had only talked with him over the phone. He further added that [appellant] was not signed up to go into the United States Army Reserve or had any commitment to enter at any future time.* He stated that it was only a discussion at this point. He also added that had he known the defendant had been convicted of a felony that the discussion would have ended at that point as they would not have accepted anyone under those conditions into the Army Reserve.

It should be noted that I talked with the defendant approximately four hours after he had been "sentenced" and he again told this investigator that he had enlisted in the U.S. Army Reserve and that he would be going for his physical on or about 2–27–91 and was not sure where he would be placed after that. *According to his recruiter that was a nice story but a complete fabrication.*

(Emphasis added.)

After receiving this letter, the trial court scheduled a "review of sentence." At least once, appellant failed to appear. A bench warrant was issued. Appellant appeared, with counsel, on May 1, 1991. At that time the trial court indicated it was going to find appellant in contempt, and it wished to execute sentence. Defense counsel requested an opportunity to review the sen-

tencing transcript. The proceeding was continued for a hearing.

On May 15, 1991, appellant appeared before the trial court. The trial court found appellant was in direct contempt under Minn.Stat. § 588.01, subd. 2 (1990) and summarily punished appellant. The trial court expressly found appellant was in contempt of court for making false statements to the court at his sentencing hearing on February 6, 1991, regarding appellant's enlistment in the service. The trial court imposed an executed term of 90 days in the workhouse, with seven days credit for time served.[1] The sentence was stayed, pending this appeal. Garcia appeals from the order of contempt.

## ISSUE

Did the trial court err by finding appellant in direct contempt and summarily punishing him?

## ANALYSIS

An analysis of a contempt order first requires a determination of the type of contempt, either civil or criminal. The statutes giving trial courts authority to punish contempt do not clearly delineate civil and criminal contempt. Rather, these definitions are found in Minnesota case law. "Whether contempt is civil or criminal is determined by the court's purpose in responding to alleged misconduct, rather than the nature of the misconduct itself." *In re Welfare of A.W.*, 399 N.W.2d 223, 225 (Minn.App.1987).

Criminal contempt involves conduct directed against the dignity and authority of the court. *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n. Inc.*, 311 Minn. 276, 285, 248 N.W.2d 733, 741 (1976). The court's sanction serves as punishment for the past disrespectful and/or contumacious conduct and serves to vindicate the court's authority. *Id.; In re Welfare of E.J.B.*, 466 N.W.2d 768, 770 (Minn.

App.1991); *see also, Knajdek v. West*, 278 Minn. 282, 285, 153 N.W.2d 846, 847 (1967). The sanction imposed for criminal contempt is a term of imprisonment of definite duration and/or a fine. *See, Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 647, 108 S.Ct. 1423, 1437, 99 L.Ed.2d 721 (1988); *Minnesota State Bar Ass'n*, 311 Minn. at 285, 248 N.W.2d at 741; *In re E.J.B.*, 466 N.W.2d at 770; *see also Knajdek*, 278 Minn. at 285–86, 153 N.W.2d at 847–48.

On the other hand, the purpose of civil contempt is to vindicate the rights of an opposing party by coercing compliance with an order through imposition of a sanction of indefinite duration, to be lifted upon compliance. *Minnesota State Bar Ass'n*, 311 Minn. at 285, 248 N.W.2d at 741; *In re A.W.*, 399 N.W.2d at 225. Because a civil contempt order coerces by giving the contemnor the power to cut short the sentence by some action, it is said "the contemnor holds the keys to his jail cell." That is, his sentence will only continue if noncompliance with the court order continues. If the contemnor complies, the sentence is lifted. *See Minnesota State Bar Ass'n*, 311 Minn. at 285, 248 N.W.2d at 741. The state agrees that despite the trial court's language, it is clear this case involves criminal contempt. The conduct at issue, making allegedly false statements to the trial court at the sentencing hearing, is conduct (if true) directed against the authority and dignity of the court. The sentence imposed for such alleged conduct was a term of imprisonment definite in duration, 90 days in the workhouse. There is no order appellant can choose to comply with to cut short his sentence.

Next we determine whether the alleged criminal contempt is "direct" criminal contempt or "constructive" criminal contempt. This classification is crucial because of consequences. Direct criminal contempt may be punished summarily. Minn.Stat. § 588.03;[2] *In re E.J.B.*, 466

---

1. The trial court refused to give appellant credit for the 15 days he served in February because that sentence was ordered as part of the plea agreement on the car theft charge and was unrelated to the finding of contempt.

2. Section 588.03 provides:
   A direct contempt may be punished summarily, for which an order shall be made reciting the facts as occurring in the immediate view and presence of the court or officer, and adjudging

N.W.2d at 770. In contrast, constructive criminal contempt cannot be punished summarily, but can only be punished after the defendant has been offered the standard criminal trial attendant with its procedural safeguards. The parties agree constructive criminal contempt requires formal procedural safeguards. *See Peterson v. Peterson*, 278 Minn. 275, 153 N.W.2d 825 (1967); *Knajdek*, 278 Minn. at 284, 153 N.W.2d at 847; *In re E.J.B.*, 466 N.W.2d at 770.

> [T]he urgent and immediate necessity of maintaining order in the courtroom which justifies the summary disposition of direct contempts does not apply where the offensive conduct is committed out of the presence of the court. In such cases, formal proceedings are needed in any event to establish the contumacious conduct involved and to give the person accused notice and opportunity to be heard.

*Peterson*, 278 Minn. at 279, 153 N.W.2d at 825.

■ The following statutory definitions apply to the classification of the contempt as either direct or constructive:

> *Direct contempts are those occurring in the immediate view and presence of the court,* and arise from one or more of the following acts:
>
> (1) Disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceedings;
>
> (2) A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the business of the court.

Minn.Stat. § 588.01, subd. 2 (1990) (emphasis added).

> *Constructive contempts are those not committed in the immediate presence of the court, and of which it has no personal knowledge,* and may arise from any of the following acts or omissions:
>
> \* \* \* \* \* \*

the person proceeded against to be guilty of a contempt, and that the person be punished as

> (2) deceit or abuse of the process or proceedings of the court by a party to an action or special proceeding;
>
> \* \* \* \* \* \*
>
> (7) any other unlawful interference with the process of proceedings of a court;
>
> \* \* \* \* \* \*

Minn.Stat. § 588.01, subds. 3(2) and 3(7) (1990) (emphasis added).

In this case the trial court found appellant in direct contempt. The trial court reasoned that because appellant allegedly made misrepresentations in open court, directly to the judge, both personally and through his attorney, the contempt occurred "in the immediate view and presence of the court," and was therefore direct contempt. *See* Minn.Stat. § 588.01, subd. 2. Thus, the trial court felt justified in summarily punishing appellant pursuant to section 588.03. We disagree.

■ Contempt is direct only if the judge has personal knowledge, at the time the contumacious conduct occurs, of *all* the operative facts which constitute the offense of contempt and are necessary for a proper adjudication of appellant's guilt. *See Knajdek*, 278 Minn. 282, 153 N.W.2d 846 (jury trial required for constructive contempt conviction based upon attorney's tardiness for court because the court had no first hand knowledge of why the attorney was late); *In re E.J.B.*, 466 N.W.2d 768 (where contempt conviction was based upon trial court's belief defendant lied under oath, contempt was constructive because the entire act did not occur before the trial court: proof of perjury requires going beyond what the judge objectively observed in court; prevention of perjury is not one of the purposes of the direct contempt statute).

Here, the trial court did not know (and the record is clear the trial court did not claim to know), that at the time the statements were made, the statements were false. Appellant made the allegedly false

therein specified.

statements at his sentencing hearing on February 6. It was not until the trial court received the letter memorandum, dated February 7, from the probation officer that the trial court had suspicions about appellant's statements. Because the trial court did not know the statements were false at the time appellant made them, the contempt did not occur in the "immediate view and presence of the court." The criminal contempt here, if any, is not direct contempt. *See* Minn.Stat. § 588.01, subd. 2. Because the contempt was not direct, *it must be proved up just like any other crime.*

■ Appellant argues that if we find the trial court erred by finding direct contempt, as we do, the charge should be dismissed rather than remanded for trial. Appellant urges the trial court's error indicates an abuse of power, and thus there should be no remand. We strongly disagree. The issue of direct versus constructive criminal contempt is close. Although we find the conviction was for constructive criminal contempt, we find no abuse of power.

■ Appellant also argues for an outright dismissal of the charge claiming there is no admissible evidence in the record to support a conviction for contempt, and thus no reason to have a trial. We disagree. We express no opinion as to appellant's guilt or innocence, or the weight to be given any evidence. Those determinations are for the factfinder. As in all criminal prosecutions, the burden, by proof beyond a reasonable doubt, rests with the state. However, it does not strain the imagination to anticipate that either the state or the defense will be able to find admissible evidence for whatever weight the factfinder might give. The probation officer and the recruiting officer, among others, are capable of producing direct evidence, and the record reflects that they exist.

■ Appellant further argues the statements he made are so ambiguous that they cannot support a conviction for contempt. That decision can only be made after the state's case is put in. It would be presumptuous and only an advisory opinion to address the weight of the state's case at this juncture.

Finally, appellant argues that his statements could never be construed to be misleading since they were merely promises to do better, and defendants are entitled to "put their best foot forward" at a sentencing hearing. The argument is credible, but has no application here. The trial court was not concerned about appellant's failure to keep a well-intentioned promise. The trial court was concerned that appellant lied about a past act. The issue is, did appellant lie when he stated he had enlisted in the service. A remand for a full criminal trial with all procedural safeguards will best protect the rights of the state and appellant.

## DECISION

We reverse appellant's conviction for direct contempt and remand for further proceedings. This matter is treated as constructive criminal contempt. If the state pursues a charge, appellant has to be offered all constitutional safeguards that exist for criminal defendants.

Reversed and remanded.