STATE of Minnesota, Respondent,

v.

Dean Elliot SPILDE, Appellant.

No. C6–95–606.

Court of Appeals of Minnesota.

Sept. 5, 1995.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Hugh T. Nierengarten, New Ulm City Atty., New Ulm, for State.

Samuel A. McCloud, Kelly, Vince, Griffitts, Chanhassen, for appellant.

Considered and decided by PETERSON, P.J., TOUSSAINT, C.J., and SCHUMACHER, J.

### OPINION

SCHUMACHER, Judge.

This appeal is from a judgment of conviction and sentence for misdemeanor DWI and refusal to submit to testing. *See* Minn.Stat. § 169.121, subds. 1(a), 1a (1992).[1] We affirm.

---

1. The jury found Spilde guilty of both DWI and refusal to submit to testing. The sentencing order does not specify for which offense Spilde was sentenced. The trial court indicated at sentencing that the two were being treated as one offense. But because the trial court stayed sen-

## FACTS

The complaint charged appellant Dean Elliot Spilde with driving while under the influence and refusing testing on March 24, 1994. On that date, Spilde was stopped in New Ulm going the wrong way on a one-way street. The officer observed indicia of intoxication and asked Spilde to perform field sobriety tests, which he failed. The officer gave Spilde the Implied Consent Advisory, and Spilde said he would take a breath test.

Spilde did not give an adequate sample of breath for the Intoxilyzer to test. After he had made a number of attempts that the officer judged inadequate, the test was stopped and marked as a refusal. The trial court in the implied consent proceedings sustained the revocation, finding that Spilde had refused testing.

Spilde's one-year revocation for refusing testing began on March 31, 1994. The complaint charging him with misdemeanor DWI and refusal to submit to testing was issued on April 18, 1994. Spilde's motion to dismiss on due process grounds was denied in August 1994. In February 1995, he moved to dismiss on double jeopardy grounds. The trial court denied that motion from the bench on February 13, 1995. The court found that the implied consent driver's license revocation was "solely remedial" and did not constitute punishment for double jeopardy purposes.

## ISSUE

Does a one-year implied consent driver's license revocation for refusing testing constitute "punishment" barring under the Double Jeopardy Clause a criminal sentence?

## ANALYSIS

■ Spilde argues that under *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the one-year implied consent revocation, although labeled a "civil" sanction, is punishment for purposes of the Double Jeopardy Clause.

In *Halper*, the Supreme Court was faced with the question

> whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause.

*Id.* at 446, 109 S.Ct. at 1901. The Court stated that it would no longer determine whether a sanction is "punishment," for purposes of double jeopardy, based solely on the label attached to it. *Id.* at 447, 109 S.Ct. at 1901. Instead, the Court stated:

> We * * * hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902.

This court has recently held that the 90–day driver's license revocation imposed in the implied consent proceeding on a first-time offender is not "punishment" under *Halper*. *State v. Hanson*, 532 N.W.2d 598 (Minn.App. 1995), *review granted* (Minn. Aug. 9, 1995). In making that determination, this court looked at the penalty imposed "and the purposes that the penalty may fairly be said to serve." *Id.* at 601 (quoting *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901). This court, addressing only the 90–day driver's license revocation, determined that that sanction was not "overwhelmingly disproportionate" to the public interest at stake. *Id.* at 602 (quoting *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902).

The one-year revocation period for refusing testing serves a somewhat different purpose than the driver's license revocation imposed for failing the chemical test.

■ The one-year driver's license revocation for refusing testing serves as a strong inducement for drivers to provide "reliable and relevant evidence" of intoxication for any criminal DWI prosecution. *Heddan v. Dirkswager*, 336 N.W.2d 54, 62 (Minn.1983) (quoting *Mackey v. Montrym*, 443 U.S. 1, 18, 99

tence pending this appeal, assuming the double jeopardy issue would be raised, we will treat the sentence as one for refusal.

S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979)). The one-year revocation also serves the remedial purpose of removing drunken drivers from the highway. *See id.* The implied consent statute generally

> provide[s] safer drivers on our highways by making available to law-enforcement officers evidence to establish in court that the person arrested was driving while under the influence of alcohol.

*State, Dep't of Highways v. Schlief,* 289 Minn. 461, 463, 185 N.W.2d 274, 275–76 (1971).

As Spilde argues, the driver who refuses testing is not as demonstratively drunk as the driver who has submitted to testing and tested over .10. But the driver who takes the test and "fails" it has his license taken away before the entire process has been put to the test of administrative and judicial review. The public interest has been held to justify the risk of erroneous deprivation of a driver's license before a hearing has been held. *Heddan,* 336 N.W.2d at 63.

The supreme court stated in 1976:

> The obvious and intended effect of the implied consent law is to coerce the driver suspected of driving under the influence into "consenting" to chemical testing, thereby allowing scientific evidence of his blood-alcohol content to be used against him in a subsequent prosecution for that offense.

*Prideaux v. State, Dep't of Pub. Safety,* 310 Minn. 405, 409–10, 247 N.W.2d 385, 388 (1976) (citation omitted).

More recently the court, while reaffirming the language from *Prideaux,* has emphasized the driver's freedom to choose either to test or not to test:

> the choice of whether to submit to the chemical testing procedures is a very important one to the individual driver. A driver must make a critical and binding decision regarding chemical testing, a decision that will affect him or her in subsequent proceedings.

*Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 832 (Minn.1991).

The Supreme Court in *Halper* identified retribution and deterrence as the principal aims of punishment. *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902. Although the one-year revocation for refusing testing may "coerce" drivers to agree to testing, we conclude that it does not do so in a punitive sense, as *Halper* uses the term "punishment." The purpose of the statute is not so much to punish past behavior as to attach a negative consequence to a present choice. *See Friedman,* 473 N.W.2d at 832 (driver has an important choice to make). To say that the one-year revocation for refusal "coerces" testing is equivalent to saying it provides a "strong inducement" to testing. *Mackey,* 443 U.S. at 18, 99 S.Ct. at 2621. We conclude that this sanction serves a remedial purpose and is not solely punitive.

In an analogous area, the purpose of a civil contempt order is to

> coerc[e] compliance with an order through imposition of a sanction of indefinite duration, to be lifted upon compliance.

*State v. Garcia,* 481 N.W.2d 133, 136 (Minn. App.1992). The purpose of a civil contempt order is to vindicate the rights of another party, not to punish the contemnor. *Id.*

The analogy between civil contempt and the one-year revocation for refusal is not exact. The implied consent revocation is not concerned with future compliance because chemical testing must be taken immediately or not at all. *See generally Friedman,* 473 N.W.2d at 835 (evanescent nature of DWI evidence requires that driver be given only limited time to contact counsel). But civil contempt law illustrates the way in which the law may coerce compliance without being "punitive" in the sense of punishment for behavior that the individual can no longer remedy.

There is a significant difference, as Spilde argues, between the duration of the 90–day revocation involved in *Hanson* and the one-year revocation for refusing testing. But the one-year revocation serves the additional, and largely remedial, purpose of inducing the driver to consent to testing. The legislature has further induced testing by making refusal a crime. This provision and the complex interrelationship of the DWI and implied consent statutes generally make it difficult to

analyze the effects of the longer civil revocation for refusal. It is generally for the legislature, however, to draft appropriate civil sanctions. *See generally Essling v. Markman*, 335 N.W.2d 237, 239 (Minn.1983) (court will not substitute its judgment for that of legislature).

We cannot conclude that the one-year revocation is so "overwhelmingly disproportionate" as to constitute punishment. *See Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. The *Halper* decision does not allow a court to disregard the civil label attached to a sanction except in the "rare case." *Id.* The one-year revocation for refusal does not present a "rare case" invoking the Double Jeopardy Clause.

## DECISION

Spilde's one-year driver's license revocation for refusing testing does not bar his criminal sentence imposed in this DWI prosecution.

**Affirmed.**

PETERSON, Judge (dissenting).

I respectfully dissent.

Under double jeopardy analysis,

the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

*United States v. Halper*, 490 U.S. 435, 447–48, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989). "[P]unishment serves the twin aims of retribution and deterrence." *Id.* at 448, 109 S.Ct. at 1902. "[R]etribution and deterrence are not legitimate nonpunitive governmental objectives." *Id.* at 448, 109 S.Ct. at 1902 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447 (1979)).

The majority finds that the one-year license revocation for refusing to submit to testing under the implied consent law is not punishment because it serves the remedial purpose of removing drunken drivers from the highway by providing a strong inducement for drivers to provide reliable and relevant evidence of intoxication for any criminal DWI prosecution. The one-year revocation is not punishment, the majority explains, because the statute's purpose "is not so much to punish past behavior as to attach a negative consequence to a present choice."

*Halper* requires a determination whether the purpose of a penalty is punitive or nonpunitive. 490 U.S. at 447–48, 109 S.Ct. at 1901–02. Under the majority's reasoning, the one-year revocation is not punishment because it does not deter drivers from refusing to take a test. Rather, it induces drivers to submit to testing. The *Halper* test becomes meaningless under this reasoning, however, because any penalty that can be described as serving the punitive purpose of deterring undesired conduct can be alternately described as serving the purpose of inducing desired conduct.

Furthermore, the one-year license revocation cannot fairly be characterized as anything other than a response to past behavior. The revocation occurs only

[u]pon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle while under the influence of alcohol or a controlled substance and that the person *refused* to submit to a test.

Minn.Stat. § 169.123, subd. 4 (Supp.1993) (emphasis added). The revocation does not occur when a driver chooses to refuse to submit to a test; it occurs only after the driver has refused. *Id.* No negative consequence attaches until a present choice to refuse becomes an actual refusal.

"Deter" means

[t]o discourage or stop by fear. To stop or prevent from acting or proceeding by danger, difficulty, or other consideration which disheartens or countervails the motive for the act.

Black's Law Dictionary 450 (6th ed. 1990).

The one-year license revocation does not, as the majority contends, induce drivers to

provide reliable and relevant evidence of intoxication. Drivers do not submit to testing in order to provide evidence. They submit to testing to avoid the one-year revocation that will be imposed if they refuse. The one-year revocation is a compelling consideration that countervails the natural inclination of any driver to refuse to submit to a chemical test. The one-year revocation serves the aim of deterring refusals and is, therefore, punishment.

The state argues that, by providing reliable evidence to be used in a criminal DWI prosecution, the one-year revocation for refusing testing serves the remedial purpose of enabling the state to avoid investigative and prosecutorial costs. The majority appears to adopt this argument when, quoting two words from *Halper*, 490 U.S. at 449, 109 S.Ct. at 1903, it states it cannot determine that the one-year revocation is so "overwhelmingly disproportionate" that it constitutes punishment. These two words are taken from the Supreme Court's description of the rule established in *Halper*:

> What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

490 U.S. at 449–50, 109 S.Ct. at 1902.

The Supreme Court states in *Halper* that investigative and prosecutorial costs must be factored into a determination whether a sanction is disproportionate to the government's loss. *Id.* at 446 n. 6, 109 S.Ct. at 1900 n. 6. The majority concludes that the one-year revocation is not "overwhelmingly disproportionate" but in reaching this conclusion, it does not compare the revocation to investigative and prosecutorial costs, or to any other government loss. The majority offers no explanation how a sanction that provides no compensation is rationally related to the goal of compensating the government.

Recognizing that a license revocation does not compensate the state directly, the state asserts that the revocation compensates instead by preventing investigation and prosecutorial costs from being incurred. But these costs are avoided only when a driver takes a test and when a driver takes a test, the one-year revocation is not imposed. It is the threat of revocation, not the revocation itself, that prevents costs from being incurred. The one-year revocation may prevent the state from incurring costs, but it does so because drivers take a test to avoid the threatened revocation.

As the majority states, this court held in *State v. Hanson*, 532 N.W.2d 598, 602 (Minn. App.1995), that the 90–day driver's license revocation imposed in the implied consent proceeding on a first-time offender is not punishment. In that case, the drivers whose licenses were revoked consented to chemical tests and the test results showed alcohol concentrations in excess of .10. *Id.* at 600. This court concluded that the 90–day license revocations were not punishment because the revocations were not overwhelmingly disproportionate to the public safety interest at stake. *Id.* at 602.

Even when the "overwhelmingly disproportionate" test is applied broadly, as it was in *Hanson*, 532 N.W.2d at 602, and we consider whether the one-year revocation is overwhelmingly disproportionate to the public safety interest in removing drunken drivers from the highway, it cannot be concluded that there is a rational relation between the sanction and the remedial purpose.

Appellant's license was revoked for one year because he refused testing, not because his alcohol concentration exceeded .10. There is no basis for concluding that because appellant refused testing he posed a greater threat to public safety than a driver who consented to testing and tested over .10. But appellant's license was revoked for a

longer period than it would have been had he actually tested over .10.

Unlike the revocations in *Hanson*, the additional license revocation imposed for refusing to submit to a chemical test is not rationally related to the purpose of protecting public safety because, unlike driving with an alcohol concentration greater than .10, a test refusal, by itself, is not a threat to public safety.