STATE of Minnesota, Respondent,

v.

Rodney V. PARKER, Appellant.

No. C4–95–426.

Court of Appeals of Minnesota.

Sept. 26, 1995.

Review Granted Nov. 21, 1995.

Hubert H. Humphrey, III, Attorney General, Catherine M. Keane, Steven H. Alpert, Assistant Attorneys General, St. Paul, Wyman A. Nelson, Wright County Attorney, Buffalo, for respondent.

Jerry Strauss, Marc S. Berris, Strauss & Associates, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., TOUSSAINT, C.J., and PARKER, J.

## OPINION

PARKER, Judge.

This appeal raises a legal issue similar to that which we decided recently in the case of *State v. Hanson*, 532 N.W.2d 598 (Minn.App. 1995), *review granted* (Minn. Aug. 9, 1995). In *Hanson*, we held that a 90–day implied consent driver's license revocation (of a driver who has failed the chemical test) is not "punishment" for purposes of the Double Jeopardy Clause. *Id.* We are now asked to decide whether a 180–day implied consent driver's license revocation for a repeat offender rises to the level of "punishment" under the same clause. The trial court answered the question in the negative. We affirm.

## FACTS

At approximately 12:20 a.m. in May of 1993, a Wright County police officer observed appellant Rodney Parker attempting to turn into a trailer park driveway. He did not signal and turned so wide that his vehicle began to go off the entrance road. The officer activated his emergency lights and followed Parker as he travelled very slowly for approximately four blocks before stopping. When the officer asked him to step out of his vehicle, he observed that the driver's speech was slurred, his breath smelled of alcohol, his eyes were bloodshot and glassy, and he had to fumble through his wallet to find his license. He also needed support while standing or walking. At the sheriff's department, Parker agreed to an intoxilyzer test, which established his .21 blood alcohol concentration.

The officer gave Parker notice and order of revocation of his driver's license pursuant to Minn.Stat. § 169.123, Minnesota's Implied Consent Law. Because his driver's license had been revoked for driving while intoxicated within the previous five years, the revocation period was 180 days instead of the 90–day period for first-time offenders. In the civil implied consent proceeding, the trial court sustained the revocation of Parker's license.

Subsequently, in a criminal trial Parker was convicted of driving while under the influence of alcohol within five years of a prior impaired-driving conviction. He appeals, arguing that this conviction is unconstitutional because he had already been placed in jeopardy for the same conduct in the implied consent hearing and by the resultant driver's license suspension of 180 days.

## ISSUE

Does a 180–day implied consent driver's license revocation for driving while intoxicated within five years of a prior conviction constitute "punishment" under the Double Jeopardy Clause, barring a subsequent criminal conviction for the same conduct?

## DISCUSSION

Parker argues that a sanction which is not *solely* remedial constitutes punishment for double jeopardy purposes. In support of his argument, he relies primarily upon the following passage from *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487, (1989):

> A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes is punishment, as we have come to understand the term.

But the above language taken out of its context is not a clear statement of *Halper*'s holding, which the Court explicitly announced:

> We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution.

*Id.* (emphasis added). Accordingly, this court has held that the latter excerpt is *Halper*'s "explicit holding." *State v. Hanson*, 532 N.W.2d 598, 601 (Minn.App.1995), *review granted* (Minn. Aug. 9, 1995) (citing *Dept. of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994)). Thus, *Hanson* rejects appellant's argument that a remedy which is not "solely remedial" is "punishment." *See also Johnson v. State*, 95 Md. App. 561, 622 A.2d 199, 205 (1993) ("While the statute is also aimed at sanctioning the offending driver, that is not its primary purpose").

■ The only question, then, in this case, is whether the 180–day revocation is " 'overwhelmingly disproportionate' to the public safety interest at stake." *Hanson*, 532 N.W.2d at 602 (quoting *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902). We note that *Halper* characterized its holding as "the rule for the rare case." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. We do not believe we have, here, the rare case in which a "small-gauge offender" is subjected to "a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* On the contrary, this is

the all too common case in which a driver who has repeatedly endangered the lives and well-being of others by driving while intoxicated is merely deprived of the privilege to drive for a six-month period.

Appellant cites portions of the legislative history of the implied consent law in support of his argument that the primary legislative purpose of the statute is to punish and deter. We believe, however, that it is unnecessary to explore the many and various motives of the individual legislators who enacted the implied consent statute. Indeed, it would be a futile exercise. As Justice Kennedy poignantly observed, concurring, in *Halper:*

> Such an inquiry would be amorphous and speculative, and would mire the courts in the quagmire of differentiating among the multiple purposes that underlie every proceeding, whether it be civil or criminal in name. It also would breed confusion among legislators who seek to structure the mechanisms of proper law enforcement within constitutional commands.

*Halper,* 490 U.S. at 453, 109 S.Ct. at 1904.

In *Hanson,* we noted that "[a] civil sanction that does not bear a 'rational relation' to a nonpunitive purpose will be treated as 'punishment.'" *Hanson,* 532 N.W.2d at 601 (citing *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902). We also noted:

> The implied consent driver's license revocation provision serves the public safety by removing drunken drivers from the highways pending the judicial hearing.

*Hanson,* 532 N.W.2d at 601 (citing *Heddan v. Dirkswager,* 336 N.W.2d 54, 63 (Minn.1983)). *See also Butler v. Department of Public Safety and Corrections,* 609 So.2d 790, 797 (La.1992) (license suspension bears rational relationship to promoting public safety on highways). The difference between the present case and *Hanson* is that due to appellant's prior impaired-driving record, he received a 180–day suspension instead of the 90–day suspension at issue in *Hanson.* It is evident, however, that one who has a prior record of driving under the influence, but who nonetheless proceeds to drink and drive, presents a manifestly higher risk to public safety. We hold, therefore, that a 180–day driver's license revocation is rationally relat-

ed to the vitally important purpose of removing repeat drunken driving offenders from our roads and highways pending a judicial hearing. *See Hanson,* 532 N.W.2d at 601.

■ The fact that this civil remedy may in some instances deter drunken driving, or that it may inconvenience those to whom it is applied, does not render it "punishment" under the Double Jeopardy Clause. Driving is a privilege voluntarily granted by the state. "[R]evocation of privileges voluntarily granted is 'characteristically free of the punitive criminal element.'" *Emory v. Texas State Bd. of Medical Examiners,* 748 F.2d 1023, 1026 (5th Cir.1984) (quoting *Helvering,* 303 U.S. at 399 n. 2, 58 S.Ct. at 633 n. 2).

It is evident that most civil remedies have, to some extent, a punitive or deterrent as well as remedial effect from the viewpoint of the individuals who suffer such sanctions. *See Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7 ("even remedial sanctions carry the sting of punishment"). A would-be tortfeasor, for example, may be deterred from damaging another's person or property by the prospect of having to pay for the damage. That fact alone, however, does not transform the tort remedy into a criminal punishment.

Instead, the question in this instance is whether the civil sanction is "so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." *Halper,* 490 U.S. at 443, 109 S.Ct. at 1899. We hold that it is not. In *Hanson,* we held that a 90–day suspension for a first-time offender was not so overwhelmingly disproportionate to the public safety interest at stake that it constituted "punishment." In the case of a repeat offender, the remedial purpose is both more obvious and more urgent. The longer period is justifiable in light of the offender's demonstrated propensity repeatedly to drive while intoxicated.

Shortly after deciding *Hanson,* this court decided *State v. Spilde,* 536 N.W.2d 639 (Minn.App. 1995). We held there that a one-year revocation for refusing to take an Intoxilyzer test is also not so overwhelmingly disproportionate to the public interest at stake that it constitutes "punishment" under the

Double Jeopardy Clause. *Id.* Although *Spilde* was a refusal case, while this is a test failure case, that difference does not establish a distinction relevant to this decision. The overriding remedial purpose involved is the same—to eliminate drunken drivers from the road. If, as *Spilde* held, it is not "punishment" to revoke a driver's license for one year for refusing testing, then it follows, *a fortiori,* that revocation for half that amount of time, in order to prevent conduct which poses an imminent threat to public safety, is also not punishment for purposes of double jeopardy analysis.

Finally, we note that other jurisdictions facing nearly this identical question have reached similar conclusions:

> *Halper* clearly applies to instances where the government attempts to extract from a person who has committed a punishable act, preceded or followed by a criminal prosecution, a monetary penalty "related to the goal of making the Government whole." The case at bar does not fit the strictures of such a "rare case." The state did not seek, nor was appellant subject to, an excessive fine at the administrative hearing. Appellant was merely deprived of some driving privileges for a two-month period.

> \* \* \*

> [W]e do not believe that the \* \* \* sanction handed down in this case rose to the level of punishment or had the punitive elements envisioned by the Supreme Court in *Halper.*

*Johnson v. State,* 95 Md.App. 561, 622 A.2d 199, 205–06 (1993) (citations omitted). The Louisiana Supreme Court has also held that the statutorily authorized license suspension under their Implied Consent Law is not

> so divorced from its intended remedial goal that it amounts to a second punishment for the same offense in violation of double jeopardy.

*Butler v. Department of Public Safety and Corrections,* 609 So.2d 790, 797 (La.1992). *See also State v. Strong,* 158 Vt. 56, 605 A.2d 510, 514 (1992) ("the license suspension proceeding is not a criminal prosecution for purposes of double jeopardy"); *State v. Young,* 3 Neb.App. 539, 530 N.W.2d 269, 278 (1995) (criminal prosecution for driving under influence not double jeopardy on basis that driver was already subjected to possible revocation of driver's license for same incident).

## DECISION

Parker's 180–day driver's license revocation for failing an intoxilyzer test does not constitute "punishment" and thus does not bar his subsequent criminal prosecution for the same incident.

**Affirmed.**