# State of Vermont v. Danny Strong

[605 A.2d 510]

No. 91-058

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 10, 1992

*Gary Kessler*, State's Attorneys Office, Montpelier, for Plaintiff-Appellee.

*E.M. Allen*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Dooley, J.** In this case we hold that the constitutional prohibition against double jeopardy does not bar criminal prosecution and punishment for driving under the influence of intoxicating liquor after the suspension of the defendant's driver's license in a civil proceeding resulting from the same underlying incident. The judgment is affirmed.

The police stopped defendant on June 17, 1990, for driving under the influence. Defendant consented to a breath test, which showed that he had a blood alcohol content (BAC) of .16%. Pursuant to the civil license suspension procedure of 23 V.S.A. § 1205, he was warned of his rights and cited.

Under the statute, unless the operator requests a hearing, the operator's license is summarily suspended for at least 90

days when analysis shows the operator's BAC to be above .08%. 23 V.S.A. § 1205(a).[1] The operator may avoid immediate suspension by requesting a hearing to determine whether the officer had reasonable grounds to believe the person was violating 23 V.S.A. § 1201(a),[2] whether the person's rights were adequately explained, and if the test was properly conducted and indeed showed a BAC level of .08% or higher. 23 V.S.A. § 1205(f), (g). A requested hearing is held in district court without a jury under the Vermont Rules of Civil Procedure; affidavits of law enforcement officials and chemists are admissible, subject to rebuttal; and the State has the burden to show the statutory requirements for suspension by a preponderance of the evidence. 23 V.S.A. § 1205(i). Suspension commences eleven days after notice of the test result and notice of intention to suspend is served. In cases where a hearing is requested and held, suspension commences immediately following a court's finding that the statutory requirements have been met. 23 V.S.A. § 1205(e), (h). A suspended license is not reinstated until its holder has completed alcohol screening, and therapy or education requirements, if needed. 23 V.S.A. § 1209a. The statute sets forth longer suspension periods for second and subsequent suspensions. 23 V.S.A. § 1205(l).

When notified of his impending license suspension, defendant waived his right to a hearing, and his suspension began July 18, 1990. On September 19, 1990, defendant was charged by information with driving under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2), based on the same incident for which his license had been suspended. Ultimately, he pled guilty to the charge, and the district court sentenced him to a

---

[1] At the time defendant was stopped, the statute required a .10 percent BAC and differed from the present law in other ways also not relevant to this appeal. The citations in this opinion are to the statute as amended in 1991.

[2] 23 V.S.A. § 1201(a) provides:

(a) A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway:

(1) when the person's alcohol concentration is 0.08 or more; or

(2) when the person is under the influence of intoxicating liquor; or

(3) when the person is under the influence of any other drug or under the combined influence of alcohol and any other drug to a degree which renders the person incapable of driving safely.

fine and suspended jail term, following its denial of his motion to dismiss on the ground of double jeopardy. The plea was entered on condition of the allowance of this appeal.

On appeal, defendant claims his DUI prosecution following his license suspension violated the double jeopardy clause of the Fifth Amendment to the United States Constitution, because it constituted multiple punishment after multiple prosecution for the same conduct. The amendment provides that no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This clause protects "'against a second prosecution for the same offense after acquittal . . . [,] against a second prosecution for the same offense after conviction[, a]nd . . . against multiple punishments for the same offense.'" *Grady v. Corbin*, 495 U.S. 508, 516 (1990) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). It is undisputed that defendant's license suspension and the subsequent criminal penalty resulted from the same conduct or "offense." We first address defendant's argument that he was twice punished for that conduct.

Traditionally, the Legislature's labeling of the license suspension proceeding as civil meant that the sanction imposed was not a punishment for double jeopardy purposes. See *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938). The United States Supreme Court has, however, recently held

> that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*United States v. Halper*, 490 U.S. 435, 448–49 (1989). Defendant's argument here is based largely on the *Halper* holding.

In *Halper*, the Court found that the imposition of punitive civil sanctions following a criminal prosecution for the same underlying misconduct violated the double jeopardy clause. *Id.* at 449–51. However, the difference in the timing of the events in this case, in which the ostensibly civil proceeding addressing the same conduct came first, is not determinative. "If in fact a civil sanction may fairly be characterized 'only as a deterrent or

retribution,' . . . then its exaction before imposition of criminal punishment should have the same double jeopardy effect as exaction afterwards." *United States v. Marcus Schloss & Co.*, 724 F. Supp. 1123, 1126 (S.D.N.Y. 1989) (quoting *Halper*, 490 U.S. at 449).

The issue of whether defendant was twice punished for the same conduct turns on whether the suspension of defendant's license under § 1205 is properly categorized as remedial, or as deterrence and retribution. This determination is essentially one of statutory construction, see *United States v. Ward*, 448 U.S. 242, 248 (1980) (examining nature of statutory penalties to determine whether Fifth and Sixth Amendment protections to criminal defendants should apply). Therefore, we look at whether the Legislature intended that the license suspension be civil and remedial, and, if so, "whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *Id.* at 248–49.

■ The plain language of the statute here indicates that the Legislature intended that the summary suspension be of a civil nature. The title of 23 V.S.A. § 1205 is "Civil suspension; summary procedure." In mandating, for example, civil rules of evidence and proof, it embodies "distinctly civil procedures" by which the Legislature "has 'indicate[d] clearly that it intended a civil, not a criminal, sanction.'" *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363 (1984) (quoting *Helvering v. Mitchell*, 303 U.S. at 402).

■ In determining whether the statutory scheme is so punitive as to negate the Legislature's intent to create a civil license suspension procedure, we are guided in part in our analysis by the factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). In that case, the Supreme Court held that summary forfeiture of citizenship was a punitive treatment for citizens who evaded the draft by departing or remaining outside the country, and thus required the constitutional procedural safeguards afforded criminal defendants. *Id.* at 164. The Court noted that it would be inclined to find a sanction punitive when it (1) "involves an affirmative disability or restraint," (2) "has historically been regarded as a punishment," (3) requires a finding of scienter, and (4) promotes the "traditional aims of punish-

ment—retribution and deterrence." *Id.* at 168. To the extent "an alternative purpose to which [the sanction] may rationally be connected is assignable for it," the sanction need not be considered punitive, if it does not appear "excessive in relation to the alternative purpose assigned." *Id.* at 168–69.

Our analysis under the *Mendoza-Martinez* factors points to the nonpunitive nature of the suspension. Although the sanction arguably involves an affirmative restraint, it is actually the "revocation of a privilege voluntarily granted," *Helvering v. Mitchell*, 303 U.S. at 399, a traditional attribute of a remedial action. See also *McGarry v. Costello*, 128 Vt. 234, 240, 260 A.2d 402, 405 (1969) (although a license is "an important and valued privilege that cannot be arbitrarily revoked . . . [,] its exercise and enjoyment are contingent upon compliance with the conditions which the legislature has imposed"); *State v. Lebo*, 129 Vt. 449, 450, 282 A.2d 804, 805 (1971) (prison disciplinary actions not punishment for double jeopardy purposes). In some contexts, including conviction for violating 23 V.S.A. § 1201, license suspension has served as a punishment, but it also has historically served a regulatory purpose. See *State v. Mastaler*, 130 Vt. 44, 50, 285 A.2d 776, 780 (1971) (statute under which defendant's driver's license could be suspended was not "penal in nature"). A finding of scienter is necessary neither for a license suspension, nor for DUI conviction in the criminal context. Although there is an element of deterrence to the summary suspension of an operator's license, this element is present in any loss of license or privilege and is not the primary focus of this statutory scheme.

The summary suspension scheme serves the rational remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the roads. License reinstatement requirements reinforce this purpose. Suspended licenses are reinstated only after operators have met screening and treatment requirements designed to identify unsafe drivers and to help them to the point where they no longer pose the same risk. The minimum suspension period is not excessive in relation to the remedial purpose, and we must defer to the Legislature in determining the remedial action necessary to achieve its goals. See *Ward*, 448 U.S. at 249 (requiring the "clearest proof" to establish the unconstitutionality of a statute

on the ground that it was so punitive as to negate Congress' intention to provide a nonpunitive remedy); *Ex parte Rogers*, 804 S.W.2d 945, 950 (Tex. Ct. App. 1990) (post-*Halper* case applying the same standard). Based on all of these factors, we conclude that defendant's license suspension was not a "punishment" for double jeopardy purposes.

In reaching this conclusion, we are cognizant of defendant's argument that *Halper* fundamentally altered double jeopardy doctrine as applied to sanctions the Legislature has labeled as remedial or civil. Indeed, *Halper* holds that the "labels 'criminal' and 'civil' are not of paramount importance." *Halper*, 490 U.S. at 447.

■ Our reading of *Halper* is more narrow than that of defendant. The *Halper* Court pointed out that its holding that a particular civil penalty was punitive "is a rule for the rare case." *Id.* at 449. The rule requires a finding that the "civil" sanction may fairly be characterized "*only* as a deterrent or retribution." *Id.* (emphasis added). "[T]he fact that a statute designed primarily to serve remedial purposes incidentally serves the purpose of punishment as well does not mean that the statute results in punishment for double jeopardy purposes." *State v. Nichols*, 169 Ariz. 409, 412, 819 P.2d 995, 998 (Ct. App. 1991) (post-*Halper* decision upholding proceeding similar to that challenged here).

We note that no court has held that the suspension of a motor vehicle operator's license is so punitive as to involve a criminal punishment for double jeopardy purposes. The decisions prior to *Halper* held that license suspension is not a criminal punishment invoking double jeopardy protection. See, e.g., *City of Orem v. Crandall*, 760 P.2d 920, 922 (Utah Ct. App. 1988). The few decisions since *Halper* hold similarly. See *Nichols*, 169 Ariz. at 412–13, 819 P.2d at 998–1000; *Ellis v. Pierce*, 230 Cal. App. 3d 1557, 1561, 282 Cal. Rptr. 93, 95 (1991); *Schreiber v. Motor Vehicles Division*, 104 Or. App. 656, 657, 802 P.2d 706, 706 (1990). In short, a "bright line" has developed because the nonpunitive purpose of the license suspension is so clear and compelling. We see nothing in *Halper* that induces us to cross that line.

■■ Defendant's second argument is that he was twice prosecuted for the same underlying conduct in violation of the

prong of the double jeopardy clause barring multiple prosecutions. In other contexts, however, we have repeatedly stated that a § 1205 license suspension is a civil proceeding, not a criminal prosecution. See, e.g., *Shaw v. Vermont District Court*, 152 Vt. 1, 6–7, 563 A.2d 636, 640 (1989) (because summary suspension hearing under § 1205 for refusal to submit to alcohol test is a civil proceeding, not a criminal prosecution, right under Vermont Constitution to trial by jury in "prosecutions for criminal offenses" does not apply, and preponderance of the evidence is adequate standard of proof); *State v. Lynaugh*, 148 Vt. 124, 126–27, 530 A.2d 555, 557 (1987) (since license suspension for failure to take breath test occurs in a civil administrative proceeding, party seeking review must petition superior court for extraordinary relief); *Carpenter v. Vermont Dep't of Motor Vehicles*, 143 Vt. 329, 334, 465 A.2d 1379, 1382 (1983) (once court finds reasonable basis for request to submit to a breath test, it has no discretion in refusal case; suspension follows purely by administrative action). Further, the license suspension proceeding is not a criminal prosecution for purposes of double jeopardy for many of the reasons discussed in this opinion. The Legislature intended a civil proceeding; the civil procedure rules apply; the evidentiary standard of proof is civil; and, finally, no criminal sanction may be imposed through the proceeding—only license suspension can take place.

*Affirmed.*