STATE of Vermont v. Harold F.
BECKER

[669 A.2d 548]

No. 95-061

September 20, 1995. Defendant appeals, claiming that a criminal prosecution for driving under the influence following an administrative license suspension arising from the same incident constitutes double jeopardy and is prohibited by the Fifth Amendment to the United States Constitution, applicable to Vermont under the Fourteenth Amendment. We affirm.

We addressed this exact issue in *State v. Strong*, 158 Vt. 56, 605 A.2d 510 (1992). Based on the test set forth by the United States Supreme Court in *United States v. Halper*, 490 U.S. 435, 448-49 (1989), we wrote in *Strong* that a civil sanction will be considered punitive if it can be fairly characterized only as a deterrent or retribution. *Strong*, 158 Vt. at 62, 605 A.2d at 514. A statute designed primarily to serve remedial purposes which incidentally has a punitive effect will not be considered punishment for double jeopardy purposes. *Id.*; see also *Halper*, 490 U.S. at 447 n.7 (noting that even remedial civil sanctions "carry the sting of punishment"). Applying the *Halper* rule to the facts in *Strong*, we held that the constitutional prohibition against double jeopardy does not bar criminal prosecution for a DUI offense after suspension of the defendant's driver's license in a civil proceeding resulting from the same underlying incident. 158 Vt. at 57, 605 A.2d at 511.

Defendant contends that in light of recent United States Supreme Court decisions, we are compelled to overrule *Strong*. We are not persuaded by defendant's argument. Moreover, we believe that the principal case cited by defendant to support his double jeopardy argument, *Department of Revenue of Montana v.*

*Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937 (1994), actually lends support to our analysis and holding in *Strong*.* In *Kurth*, the issue before the United States Supreme Court was whether a Montana state tax imposed on the possession and storage of illegal drugs constituted punishment in the context of double jeopardy. *Id.* at 767, 114 S. Ct. at 1939-40. The Court held that the drug tax departed so far from normal revenue laws that it had an "unmistakable punitive character," and therefore was a form of punishment for the purpose of double jeopardy analysis. *Id.* at 783, 114 S. Ct. at 1948.

In *Strong*, we interpreted the holding in *Halper* narrowly, emphasizing that finding a particular civil sanction to be punitive is "a rule for the rare case." 158 Vt. at 62, 605 A.2d at 514. *Kurth* confirms our interpretation of *Halper*. In *Kurth*, although the Court held that the Montana drug taxing scheme was punitive, it cautioned that a tax should not be invalidated merely because it might be oppressive or the legislature's motive was somehow suspect. 511 U.S. at 779, 114 S. Ct. at 1946. The fact that a remedial civil sanction has punitive elements does not necessarily render it punishment for double jeopardy purposes. Rather, a civil sanction will be considered punitive if it can fairly be characterized *only* as a deterrent or retribution. *Id.* at 777, 114 S. Ct. at 1945 (citing *Halper*, 490 U.S. at 448-49). In finding the Montana drug tax to be essentially punitive, the Court emphasized the egregious facts in *Kurth*. It noted that the drug tax is "exceptional," and "[t]aken as a whole, [the] drug tax is

---

* Defendant also relies on *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801 (1993), but that decision is based on the excessive fines clause of the Eighth Amendment and not the double jeopardy prohibition of the Fifth Amendment. *Id.* at 606, 113 S. Ct. at 2804. It does not support defendant's argument.

a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* at 783, 114 S. Ct. at 1948 (tax levied on goods that taxpayer never lawfully possessed has unmistakable punitive character).

In contrast to the unmistakably punitive drug tax in *Kurth*, we reaffirm our conclusion in *Strong* that "the nonpunitive purpose of the license suspension is. . . clear and compelling." *Strong*, 158 Vt. at 62, 605 A.2d at 514. License suspension statutes "serve[] the rational remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the roads." *Id.* at 61, 605 A.2d at 513. Decisions from other jurisdictions have rejected defendant's interpretation of *Kurth* and followed our analysis in *Strong*. See *Snow v. Superior Court*, 903 P.2d 628 (Ariz. Ct. App. 1995) (automatic license suspension primarily remedial and does not constitute punishment for double jeopardy purposes); *State v. Higa*, 897 P.2d 928, 933 (Haw. 1995) (administrative license revocation process not punitive because purpose is to safeguard public and reduce traffic fatalities caused by those driving under influence); *State v. Savard*, 659 A.2d 1265, 1268 (Me. 1995) (revocation of driver's license nonpunitive in character because overriding purpose of statute to provide public with safe roadways); *State v. Hanson*, 532 N.W.2d 598, 601-02 (Minn. Ct. App. 1995) (implied consent driver's license revocation provision held to be remedial in nature because it serves public safety by removing drunken drivers from highways); *State v. Miller*, 1995 WL 275770 (Ohio Ct. App. 1995) (administrative suspension of driver's license does not constitute punishment under double jeopardy clause because remedial in nature).

We see no reason to overrule our holding in *Strong*.

*Affirmed.*