STATE OF NEBRASKA, APPELLEE, V. PHILIP M. YOUNG, APPELLANT.

544 N.W.2d 808

Filed March 8, 1996.   No. S-94-495.

James E. Schaefer, of Gallup & Schaefer, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Philip M. Young was arrested for driving a motor vehicle while under the influence of alcohol (DUI), in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992) (now codified at Neb. Rev. Stat. § 60-6,196 (Reissue 1993)). Young was convicted of that offense by a jury in the Douglas County Court. On appeal, the district court for Douglas County affirmed the conviction. The Nebraska Court of Appeals in turn affirmed the district court. *State v. Young*, 3 Neb. App. 539, 530 N.W.2d 269 (1995). We affirm.

Young was arrested at his home on suspicion of DUI on April 16, 1993, following a confrontation with another motorist. When the arresting officer arrived, Young had already parked his car in his garage and allegedly had been drinking inside his home. The arresting officer administered a field sobriety test to Young; Young failed the test. The officer then took Young to the

police station where he administered an Intoxilyzer test. Because Young's breath alcohol level registered in excess of .10, the arresting officer issued Young a citation for DUI. The officer also impounded Young's driver's license pursuant to Neb. Rev. Stat. § 39–669.15 (Cum. Supp. 1992) (now codified at Neb. Rev. Stat. § 60–6,205 (Reissue 1993)), which provides for administrative license revocation (ALR) in addition to criminal prosecution and sentencing.

Young petitioned for a hearing with the Department of Motor Vehicles. At his hearing, Young presented evidence that he was not operating his vehicle at the time that he was intoxicated. Persuaded by Young's showing, the director of the Department of Motor Vehicles restored Young's license. Young then appeared before the county court for Douglas County to defend against the criminal DUI charge. Young moved to dismiss the charge, arguing that prosecution for DUI following his exoneration at the ALR hearing violated the Double Jeopardy Clause of the Nebraska Constitution and the Fifth Amendment to the U.S. Constitution. Alternatively, Young argued that principles of collateral estoppel bar the State from relitigating a claim in county court after losing on the merits at the administrative level. The Douglas County Court denied Young's motion. Young appeals his conviction, raising the same issues in this court.

Young first asserts that ALR constitutes punishment and that, as such, the Double Jeopardy Clause of the Fifth Amendment bars any criminal prosecution and punishment following an ALR hearing. This argument stems from the question of whether a sanction such as ALR is remedial or punitive in purpose, raised by the U.S. Supreme Court in *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989). Under Young's interpretation of *Halper*, a statute whose purpose is partially punitive must necessarily constitute punishment, thereby triggering the protections of the Double Jeopardy Clause.

This assignment of error must fail on the basis of our own recent decision in *Hansen v. State, ante* p. 177, 542 N.W.2d 424 (1996). We found in *Hansen* that the purpose of ALR is to protect the public from the health and safety hazards of drunk

driving by quickly getting DUI offenders off the road. At the same time, the ALR statutes also further a purpose of deterring other Nebraskans from driving drunk. *Hansen, supra*. These dual purposes do not offend the Supreme Court's holding in *Halper* that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 448–49.

The fact that a statute designed primarily to serve remedial purposes secondarily serves the exemplary purpose of general deterrence does not require a conclusion that the statute results in punishment for double jeopardy purposes. *Hansen, supra*. Since we found ALR to serve primarily a remedial purpose, the prohibition of multiple punishments enunciated in *Halper* does not apply to Young's case. This assignment of error fails.

Young's second argument is predicated upon his success at the ALR hearing. Young persuaded the ALR hearing officer that he had achieved statutory intoxication level in the safety of his home by "chugging" five or six shots from a vessel of whiskey in the spare moments between his arrival at home and the arrival of the arresting officer. Young complains that his criminal trial constituted relitigation of a settled claim, and he argues that the doctrine of collateral estoppel bars such relitigation by the State.

Collateral estoppel arises in a criminal case with the existence of four conditions: (1) the identical issue was decided in a prior action, (2) that action resulted in a valid final judgment on the merits, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) the parties had the opportunity to fully and fairly litigate the issue in the prior action. *State v. Gerdes*, 233 Neb. 528, 446 N.W.2d 224 (1989). In relying on collateral estoppel in relation to the constitutional protection against double jeopardy in a present proceeding, a criminal defendant has the burden to prove that the particular issue which the State seeks to relitigate was necessarily and conclusively determined in the prior proceeding. *Id*.

Under *Gerdes*, Young must show that the issue of whether he was operating a motor vehicle under the influence of alcohol was determined at his ALR hearing and that his ALR hearing operates as a judicial proceeding. We acknowledge that the ALR hearing officer found that Young had parked the car before he began drinking. That finding, however, cannot deprive the county court of its jurisdiction to hear Young's criminal charges.

The constitutional basis for collateral estoppel in a criminal case is founded on the principle that the Double Jeopardy Clause prohibits multiple prosecutions and multiple punishments. *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Because we held in *Hansen, supra*, that ALR does not amount to punishment, Young has no constitutional basis for his collateral estoppel challenge. The absence of double jeopardy exposure forecloses the application of collateral estoppel against the State in its prosecution of DUI after an ALR hearing because only remedial sanctions could have been imposed at that civil traffic proceeding. See *State v. Higa*, 79 Haw. 1, 897 P.2d 928 (1995).

Furthermore, the doctrines of collateral estoppel and res judicata are not applicable when the burden of persuasion is different in the subsequent proceeding. *State v. Yelli*, 247 Neb. 785, 530 N.W.2d 250 (1995). In an ALR hearing, the State establishes its prima facie case for license revocation by submitting the arresting officer's report. The burden of proof thereafter rests solely with the motorist, who must show by a preponderance of the evidence that the requirements for ALR are not satisfied. *McPherrin v. Conrad*, 248 Neb. 561, 537 N.W.2d 498 (1995). Conversely, the burden in the criminal proceeding rests solely with the State, which must prove beyond a reasonable doubt every element of the charged offense. *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995).

In *Yelli, supra*, we applied this reasoning to find that the judgment in a civil paternity action is not binding under the doctrines of res judicata and collateral estoppel in a subsequent criminal prosecution for criminal nonsupport of children. The same difference in burdens constitutes the fatal flaw in Young's preclusion arguments. The process by which the issue of Young's intoxication was adjudicated in the civil action cannot

be reconstructed on the basis of a new and different burden at the criminal trial. See *Yelli, supra.* Given that the more serious issues of criminal guilt or innocence are not at stake in a civil administrative proceeding, the difference in burdens also indicates that the State lacked a full and fair opportunity to litigate its case against Young in the ALR hearing. See *State v. Bishop*, 113 N.M. 732, 832 P.2d 793 (N.M. App. 1992).

Were we to grant Young's plea for preclusion, we would violate not only our own precedent of collateral estoppel, but also sound policy reasons for leaving a degree of separation between the civil ALR hearing and criminal DUI prosecutions. Were this court to force the State to litigate thoroughly every element of DUI at an ALR hearing, such a holding would seriously undermine the Legislature's goal of providing an informal and prompt review of the decision to suspend a driver's license. See *Bishop, supra.* ALR hearings would quickly evolve into full–blown trials at which the State must fully litigate every possible issue regarding a motorist's actions, thereby losing their effectiveness in removing potentially dangerous drivers from the Nebraska highways within 1 month of their offense.

Because Nebraska's ALR proceedings serve mostly remedial functions, Young's subsequent criminal prosecution is not barred by principles of double jeopardy or, accordingly, principles of collateral estoppel.

AFFIRMED.

CONNOLLY, J., concurring.

I concur in the result reached by the majority, but write separately to address issues raised by the dissent. The dissent ignores the U.S. Supreme Court's holding in *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989); rebukes the majority of this court for ignoring the U.S. Supreme Court; mischaracterizes the holding of the majority opinion in *State v. Hansen, ante* p. 177, 542 N.W.2d 424 (1996); and misconstrues the holdings of appellate courts from other jurisdictions. Consequently, I am compelled to respond.

The issue presented in this case, as in *Hansen*, is best articulated by the Court in *Halper*, which stated: "[T]he question we face today [is]: whether a civil sanction, in

application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." 490 U.S. at 443. The *Halper* Court went on to provide the general principle from which to resolve this issue by stating:

> We therefore *hold* that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosection may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only as a deterrent or retribution.*

(Emphasis supplied.) 490 U.S. at 448–49.

After applying *Halper*'s holding to the facts of *Hansen, supra*, this court found that substantial remedial purposes underlie Nebraska's ALR statutes and concluded that its primary remedial character was not defeated by the fact that the statutes also play a secondary role in deterring others from driving drunk. As a result, we held that "the Double Jeopardy Clauses of the U.S. and Nebraska Constitutions do not bar prosecuting a motorist for DUI after the motorist's driver's license has been administratively revoked, because such revocation does not subject the offender to multiple punishment for the same offense." *Hansen, ante* at 194, 542 N.W.2d at 435.

Despite *Halper*'s clear holding, the dissent focuses on a seemingly inconsistent passage within that opinion which states "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." 490 U.S. at 448. The dissent asserts that this passage is the holding of *Halper* and that the majority of this court ignored the U.S. Supreme Court. I find such assertions troubling in light of the fact that the language the majority followed as precedent was deemed the "holding" by the *Halper* Court. ("We therefore hold . . . ." *Id.*)

Black's Law Dictionary 731 (6th ed. 1990) defines "holding" as "[t]he legal principle to be drawn from the opinion (decision) of the court. Opposite of dictum . . . ." It is the duty of this court to follow the holdings of the U.S. Supreme Court, which

is, as the dissent points out, "the only legal authority in this nation empowered to bind this court." Thus, if any "selective reading" or strategic ignoring of the U.S. Supreme Court has occurred, it was not done by the majority.

The dissent goes on to state that "[t]he selective reading of *Halper* endorsed by the majority might be easier to accept had the U.S. Supreme Court not resolved the question of which interpretation of *Halper* is correct in *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)." However, the *Austin* Court did not proclaim that opinion to be a modification or reversal of *Halper*. Instead, it merely applied *Halper*'s dictum to the civil forfeiture context. In fact, the only cases cited by the dissent that applied *Austin*'s language were in the civil forfeiture context. As of this date, this court has not had the opportunity to determine whether civil forfeitures constitute punishment for purposes of double jeopardy. In any event, that issue is not in question in the instant case.

Interestingly, the dissent cites *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995), a case "considering [the] alleged deterrent impact of sex offender registration and community notification statutes," for the proposition that "*Austin* clarifies *Halper*'s prohibition of punitive purposes in civil sanctions." However, in *Poritz* the court found:

> The contention . . . based on the language that initially appeared in *Halper*, that even the slightest deterrent consequence, *whether intended or not*, whether the inevitable consequence of remedial provisions or not, renders the statute or the sanction involved "punishment" is not borne out either by a careful reading of the language relied on or by the judicial analysis of the issue. Furthermore, the contention is not supported by the outcome in various cases where the claim of punishment is rejected despite some obvious deterrent impact.

(Emphasis supplied.) 142 N.J. at 60, 662 A.2d at 397.

Thus, it is obvious that *Poritz* does not stand for the proposition that *Austin* is a clarification of *Halper* as the dissent claims. To the contrary, *Poritz* provides significant support to *State v. Hansen, ante* p. 177, 542 N.W.2d 424 (1996). One of the cases referred to by the *Poritz* court was *Department of*

*Revenue of Montana v. Kurth Ranch*, ____ U.S. ____, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994). In *Kurth Ranch*, a case decided after *Halper* and *Austin*, the Court found the drug tax imposed to be excessive and thus punishment; however, it acknowledged that other types of nonpunitive sanctions could legitimately include deterrent aspects. ("We begin by noting that neither a high rate of taxation nor an *obvious deterrent purpose* automatically marks this tax a form of punishment." 114 S. Ct. at 1946. "While a high tax rate and *deterrent purpose* lend support to the characterization of the drug tax as punishment, these features, in and of themselves, do not necessarily render the tax punitive." (Emphasis supplied.) *Id*. at 1947.)

The dissent does not mention *Kurth Ranch* in its opinion because it refutes the dissent's position that *Austin* was a clarification of *Halper*. If *Austin* was intended to be applicable outside the forfeiture context, the Court would not have subsequently stated in *Kurth Ranch* that an obvious deterrent purpose does not automatically mark a civil sanction a form of punishment.

The dissent mischaracterizes the holding of *Hansen* by asserting "[t]he majority in *Hansen* and this case, among other jurisdictions, adopted the [holding of *Halper*] and interpreted it to mean that a civil sanction must be *only* deterrent in nature, lacking any remedial aims, to qualify as punishment."

The dissent implies that the majority interpreted *Halper* to mean that even if a statute has a primary punitive purpose, it would not qualify as punishment for purposes of double jeopardy so long as it has a secondary remedial purpose. However, in *Hansen*, we held "the fact that a statute designed primarily to serve remedial purposes secondarily serves the exemplary purpose of general deterrence as well does not necessitate the conclusion that the statute results in punishment for double jeopardy purposes." *Hansen, ante* at 191, 542 N.W.2d at 434. If in fact the sanction had a primary punitive purpose, then clearly it would constitute punishment for purposes of double jeopardy.

Finally, the dissent misstates that all the courts which find ALR to be remedial "simply deny that any deterrent purpose exists in ALR." It is obvious that the dissent did not carefully

analyze these opinions. The courts that have dealt most convincingly with this problem have acknowledged that the revocation of a driver's license based on the driver's misconduct does have a deterrent aspect. Nevertheless, these courts have held that administrative license revocations remain "remedial" in nature. See, *State v. Zerkel*, 900 P.2d 744, 756 (Alaska App. 1995) (administrative revocation of driver's license is remedial even though it may have a deterrent goal and may achieve some deterrent effect. "[I]t would be naive to suggest that the legislature did not hope to deter misconduct when it enacted the statutes . . . . But this deterrent purpose does not mean that administrative revocation of these licenses is 'punishment' for purposes of the double jeopardy clause"); *State v. Savard*, 659 A.2d 1265, 1268 (Me. 1995) ("we conclude that any punitive or deterrent purpose served by the suspension of an operator's driver's license following an arrest for [DUI] is merely incidental to the overriding purpose intended by the Legislature to provide the public with safe roadways"); *State v. Strong*, 158 Vt. 56, 61, 605 A.2d 510, 513 (1992) ("[a]lthough there is an element of deterrence to the summary suspension of an operator's license, this element is present in any loss of license or privilege and is not the primary focus of [the] statutory scheme"); *State v. Nichols*, 169 Ariz. 409, 413, 819 P.2d 995, 999 (Ariz. App. 1991) ("[w]e acknowledge that [ALR] may serve an additional purpose of punishing the violator and perhaps deterring that individual as well as other drivers from driving while intoxicated. We do not believe, however, that because of this incidental effect, it 'may not fairly be characterized as remedial' " (citing *Halper, supra*)). See, also, *Butler v. Dept. of Public Safety & Corr.*, 609 So. 2d 790 (La. 1992).

Likewise, under our ALR statutes, any deterrent purpose served by the revocation of a driver's license following an arrest for DUI is merely secondary to the overriding remedial purpose of providing the public with safe roadways. As a result, the Double Jeopardy Clauses of the U.S. and Nebraska Constitutions do not bar prosecuting a motorist for DUI after the motorist's driver's license has been administratively revoked because such revocation does not subject the offender to

multiple punishment for the same offense.

WHITE, C.J., dissenting.

> Underlying the principle of double jeopardy is the idea that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). Accordingly, the State is prohibited from repeated attempts to punish an individual, as multiple punishments are anathematic to the Double Jeopardy Clause. *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989). Few principles of American constitutionalism have been more "deeply 'rooted in the traditions and conscience of our people.' " *Bartkus v. Illinois*, 359 U.S. 121, 155, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959) (Black, J., dissenting).

In following the majority of other state appellate courts, the majority here finds the existence of a consensus of states is more meaningful than what that consensus says. Most disturbingly, the majority ignores the U.S. Supreme Court, the only legal authority in this nation empowered to bind this court. Because the majority has made the initial critical error of rejecting U.S. Supreme Court precedent at the outset, all that follows in *State v. Hansen, ante* p. 177, 542 N.W.2d 424 (1996), and the instant case is contrary to the amendment from which that precedent derives.

### HALPER AND AUSTIN

*Halper* arose from the federal criminal prosecution of 65 counts of false medicare claims. After the trial court sentenced Halper to 2 years in prison and a fine of $5,000, the government instigated further action against Halper under the civil counterpart to the criminal false claims statutes, which provided for monetary penalties. Although the government acknowledged that this civil penalty had some punitive purposes, it argued that

the concurrent remedial purpose of the civil sanction precluded a finding that the penalty was "punishment," and thus precluded double jeopardy scrutiny. *Id*.

The Court rejected this interpretation of "punishment" and rendered a definition of punishment that is instructive to this court's task in this case. The emerging rule from *Halper* states that a civil sanction constitutes punishment when the sanction "serves the goals of punishment." *Id*. at 448. The Court elaborated on this simple rule by holding that

> punishment serves the twin aims of retribution and deterrence. . . . Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." . . . From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term.

(Citations omitted.) *Id*.

This language creates a simple equation: a sanction equals punishment, not a mere "penalty," when the purpose behind the sanction impedes or has a tendency to prevent a given act— when the State seeks, through this penalty, to deter its citizens from certain behavior. Having presented this simple equation, however, the *Halper* Court then obscured that simplicity by writing in the following paragraph that "under the Double Jeopardy Clause, a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 448–49. Many jurisdictions, including this court, have taken the apparent incongruity as an invitation to read *Halper* selectively, rejecting the simple equation and the language whence it derives in favor of this latter language. See, e.g., *Hansen, supra*; *Tench v. Com.*, 21 Va. App. 200, 462 S.E.2d 922 (1995); *State v. Hanson*, 532 N.W.2d 598 (Minn. App. 1995).

In the analysis of punitive elements of ALR, a court's choice of language from *Halper* is critical. The majority in *Hansen* and this case, among other jurisdictions, adopted the latter language

and interpreted it to mean that a civil sanction must be *only* deterrent in nature, lacking any remedial aims, to qualify as punishment. Conversely, the former *Halper* language, which requires sanctions "*solely* to serve a remedial purpose," indicates that a civil sanction must be *only* remedial to avoid characterization as punishment. One interpretation shields from double jeopardy scrutiny an ALR sanction whose purposes include deterrence; the other interpretation focuses scrutiny on punishment where punishment appears, even if it appears in tandem with a remedial purpose.

The selective reading of *Halper* endorsed by the majority might be easier to accept had the U.S. Supreme Court not resolved the question of which interpretation of *Halper* is correct in *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993). The *Halper* language requiring a "solely . . . remedial purpose" appears—*twice*—in *Austin*, in response to the government's claim that because a statutory in rem civil forfeiture did not solely seek to deter, but also furthered a remedial purpose, it was not punishment. *Austin*, 113 S. Ct. at 2806 and 2812. Significantly, the language from *Halper* that seems to require a solely deterrent purpose in order to trigger double jeopardy protection does not appear in *Austin*. More significantly, in quoting the language requiring a " '*solely* . . . remedial purpose,' " the *Austin* Court deliberately emphasized the word "solely," even further clarifying the Court's intent in *Halper. Austin*, 509 U.S. at 621.

Beyond the context of ALR, courts have found no difficulty in reading *Halper* and *Austin* together, such that *Austin* clarifies *Halper*'s prohibition of punitive purposes in civil sanctions. See, *U.S. v. Ursery*, 59 F.3d 568 (6th Cir. 1995) (finding civil forfeiture to qualify as punishment); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995) (considering alleged deterrent impact of sex offender registration and community notification statutes); *U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir. 1994) (determining whether civil forfeiture pursuant to money laundering statutes qualifies as punishment), *op. amended* 56 F.3d 41 (9th Cir. 1995); *State v. 1979 Cadillac DeVille*, 632 So. 2d 1221 (La. App. 1994) (finding civil forfeiture pursuant to drug conviction to qualify as punishment).

Within the context of ALR, however, courts have refused to read *Austin* and *Halper* together. This court, among others, rejects *Austin*—and its clarification of *Halper*—on the grounds that *Austin* was decided under the Excessive Fines Clause of the Eighth Amendment, rather than under the Double Jeopardy Clause of the Fifth Amendment. See, e.g., *State v. Hansen, ante* p. 177, 542 N.W.2d 424 (1996); *Tench, supra*; *Hanson, supra*. These courts fail to explain why *Austin* punishment analysis, which was decided under *Halper* punishment analysis, is incongruous with the application of *Halper* to ALR cases. The majority in *Hansen* dismissed *Austin* summarily, stating only that "*Austin*, which was . . . decided upon the Eighth Amendment's 'Excessive Fines' Clause [is] inapplicable to [this] case." *Ante* at 185, 542 N.W.2d at 430. Other courts have altogether ignored *Austin* in considering the reach of *Halper*. See, e.g., *State v. Young*, 3 Neb. App. 539, 530 N.W.2d 269 (1995); *State v. Funke*, 531 N.W.2d 124 (Iowa 1995); *State v. Higa*, 79 Haw. 1, 897 P.2d 928 (1995). Indeed, the State fails altogether to even mention *Halper* and *Austin* in its brief, much less explain why *Austin* is inapposite to our consideration.

I will not assent to this selective reading of U.S. Supreme Court holdings. This court is bound not by a majority of other jurisdictions, but only by the precedent and the guidance of the U.S. Supreme Court. Yet, the majority has cavalierly dismissed the U.S. Supreme Court's holding in *Austin* that "punishment" under the Eighth Amendment and "punishment" under the Fifth Amendment are defined by the same constitutional ideals. In so doing, the majority disregards the facts that both *Halper* and *Austin* seek a definition of "punishment"; both *Halper* and *Austin* consider how much of a deterrent purpose is permissible before an ostensibly remedial sanction becomes "punishment"; and the *Austin* Court found that the correct inquiry under *Halper* "is whether forfeiture serves *in part* to punish, and one need not exclude the possibility that forfeiture serves other purposes to reach that conclusion," (emphasis in original) 509 U.S. at 619 n.12.

Because both the Fifth and Eighth Amendments limit the government's power to punish its citizens, what the Constitution prohibits as "punishment" under one amendment cannot

logically be permissible under another. *Austin* and *Halper* define "punishment" as the threshold inquiries for the respective amendments each case concerns: we must first know what "punishment" is before we can assess whether a particular sanction is, by virtue of the Fifth or Eighth Amendment, imposed against the mandates of the Bill of Rights. The majority, however, makes the same artificial distinction of *Austin* from *Halper* that other state courts have made in order to circumvent *Halper*'s rule that deterrent–purpose sanctions equal "punishment." The only fair reading of *Austin* counsels that *Austin* and *Halper* together resolve the "punishment" issue with respect to civil sanctions. To conclude otherwise effectively invalidates the Double Jeopardy Clause by allowing multiple punishments for the same conduct merely because the punishments also serve remedial purposes. *U.S. v. Hudson*, 14 F.3d 536 (10th Cir. 1994).

The governing language of *Halper* is the language emphasized in *Austin*, stating that " 'a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment . . . .' " *Austin*, 509 U.S. at 610. Even absent *Austin*, the ultimate result of *Halper* would demand the same conclusion: the Court remanded Halper's case to the trial court with instructions to ascertain how much of the civil penalty exceeded what was necessary to compensate the government, and to eliminate the excess as serving not a remedial purpose, but an improper punitive purpose. The Supreme Court's instruction in *Halper* should guide our determination of whether ALR in Nebraska serves as the first of an impermissible two punishments for one offense.

## CHARACTERISTICS OF "PUNISHMENT"

*Halper* provided a procedural framework for this determination: a reviewing court, burdened with the task of determining whether a civil sanction qualifies as punishment, must perform "a particularized assessment of the penalty imposed and purposes that the penalty may fairly be said to serve." *Halper*, 490 U.S. at 448. The Court ruled that a civil penalty should bear a "rational relation" to the goal of

remedying the government's claimed malady, and should not "[appear] to qualify as 'punishment' in the plain meaning of the word." 490 U.S. at 449. This language is instructive to the question of whether the true purpose of ALR looks more like a remedy or more like punishment.

### REMEDIAL PURPOSE

The State argued that Neb. Rev. Stat. § 39-669.15 (Cum. Supp. 1992) (now codified at Neb. Rev. Stat. § 60-6,205 (Reissue 1993)) is partially remedial in purpose and that any punitive element rises at worst to an acceptable "sting of punishment" described by the *Halper* Court. 490 U.S. at 447 n.7 (noting that "for the defendant even remedial sanctions carry the sting of punishment"). In tolerating the punitive purpose of ALR, the majority confuses the distinction made by the *Halper* Court: a punitive purpose violates double jeopardy, whereas a punitive "sting" or inevitable punitive impact does not. In determining whether ALR carries a punitive "sting" or rather operates with a purpose of punishing the motorist, we are properly guided by *Halper*'s question of what purpose a sanction may "fairly be said . . . to serve."

The Supreme Court of New Jersey applied this analysis in *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995), which I cite as an example of a truly remedial remedy to be contrasted against ALR. In *Poritz*, a convicted sex offender sought to enjoin enforcement of statutes requiring registration of convicted sex offenders and community notification of their presence. The appellant argued that these statutes violated the Double Jeopardy Clause's prohibition against multiple punishments. The Supreme Court of New Jersey rejected this challenge and upheld the statutes, finding that the legislature had addressed rationally a problem within its competence and without any intent of punishing. The statutes responded to a documented history of attacks by convicted sex offenders in New Jersey. The state had warned that any harassment of known sex offenders would not be tolerated, and had further expressed in the clearest words that the sole purpose of these statutes was to protect, not to punish. This stated purpose was borne out by the words and operation of the statutes, which suggested means

by which a community, notified of the presence of a sex offender, could act to protect its children and families from reoffense. Because the statutes focused on the state's responsibility to the community, the sanction of registration and notification could not fairly have been said to serve as further punishment for convicted sex offenders.

In upholding the statutes, the *Poritz* court analyzed the degree of deterrence or retribution that the Fifth Amendment tolerates in a remedial statute. The court never denied that convicted sex offenders would feel stigmatized if their neighbors learned of their status. This stigma, however, was the "sting of punishment" and not the deliberate purpose of the statute. "What counts . . . is the purpose and design of the statutory provision, its remedial goal and purposes, and not the resulting consequential impact, the 'sting of punishment' that may inevitably, *but incidentally*, flow from it." (Emphasis supplied.) *Poritz*, 142 N.J. at 58, 662 A.2d at 396.

The *Poritz* court wrote that the Double Jeopardy Clause was not intended to prevent government from performing its legitimate functions, "especially when [a statute's] regulatory intent is totally free of any suggestion of concealed punitive purpose. As the punitive impact becomes more pronounced, however, the balance may shift and the fact of punishment may overwhelm the purity of the government's action, imputing to it . . . a punitive purpose." 142 N.J. at 61, 662 A.2d at 398. By distinguishing punitive *impact* from punitive *purpose*, the *Poritz* court distinguished the sex offender statutes from other statutes whose purpose cannot be limited to remedy.

The regulatory intent of the New Jersey sex offender statutes was consciously free from a deliberate punitive purpose. The same cannot be said of Nebraska's ALR statutes. The ALR statutes do not reflect the remedial aspects of the New Jersey sex offender statutes: the focus of ALR is the offender and the crime rather than a general, remedial purpose. The deterrent— and thus punitive—effect of ALR far exceeds the "sting" or incidental impact that *Halper* tolerates. The most painfully obvious evidence of a punitive purpose appears in the introductory paragraph of § 39-669.15 (now § 60-6,205):

> Because persons who drive while under the influence of alcohol present a hazard to the health and safety of all persons using the highways, a procedure is needed for the swift and certain revocation of the operator's license of any person who has shown himself or herself to be a health and safety hazard by driving with an excessive concentration of alcohol in his or her body and *to deter others from driving while under the influence of alcohol.*

(Emphasis supplied.)

This language is inescapable. Despite *Halper*'s holding that "deterrence is not a legitimate nonpunitive purpose," 490 U.S. at 447, the Legislature chose to state in the clearest words its intent to deter Nebraskans from driving drunk. This blunt deterrent purpose does not concern the majority, which finds that a secondary deterrent purpose somehow passes muster under *Halper*. The majority admits the existence of a deterrent purpose in this case and in *Hansen, supra*, holding that "[t]he fact that a statute designed primarily to serve remedial purposes secondarily serves the exemplary purpose of general deterrence does not require a conclusion that the statute results in punishment for double jeopardy purposes."

This holding defies both *Halper* and all reasonable explanation. Common sense tells us that general deterrence is achieved by punishing one as an example for others; it cannot be achieved without an instance of specific deterrence. The *Halper* Court never distinguished between general and specific deterrence in stating that any deterrent purpose is impermissible. Even without the clarification of *Austin*, the language of *Halper* allows at most a "sting of punishment," and certainly does not permit an "exemplary purpose of general deterrence." In fact, not one of the courts that upholds ALR on the basis of a more restrictive reading of *Halper* has allowed anything resembling an "exemplary purpose of general deterrence." Those courts simply deny that any deterrent purpose beyond a "sting of punishment" exists in ALR. As the Nebraska Legislature—unlike any other state legislature—removed all question of a deterrent purpose in its wording of § 39-669.15 (now § 60-6,205), the majority has set forth an

unprecedented interpretation of *Halper* that allows a deterrent purpose—the very thing that *Halper* stands to prohibit.

If a particular remedial sanction can only be understood as also serving punitive goals, then the person subjected to that sanction has been punished despite that the sanction is also remedial. *U.S. v. Hudson*, 14 F.3d 536 (10th Cir. 1994). See, also, *Kvitka v. Board of Registration in Medicine*, 407 Mass. 140, 551 N.E.2d 915 (1990) (finding that remedial purpose of sanctioning physician, convicted of drug offense, was overwhelmed by disciplinary board's stated desire to punish physician and to deter other physicians from engaging in similar conduct, thereby triggering double jeopardy protection). The fact that ALR may advance a remedial purpose of clearing our roads of drunk drivers cannot negate the fact that the Legislature also aimed, in deliberate design and purpose, to deter drunk driving by creating another means of punishing drunk drivers.

Not only is the deterrent purpose at least equal in force to the stated remedial purpose, but a careful reading of the ALR statutes reveals provisions that weaken the force of the remedial purpose. Notably, as the arresting officer impounds a motorist's license with one hand, he or she immediately issues the motorist a 30-day temporary license with the other hand. § 39-669.15(4) (now § 60-6,205(4)). Yet the stated remedial purpose of ALR is to get drunk drivers off the roads immediately, thereby ostensibly reducing the chance that a motorist will drive drunk again between arrest and trial. The persuasive value of this purpose depends on an assumption that a drunk driver poses no DUI threat during the life of the 30-day temporary permit, but that the DUI threat is resurrected when the 30-day period expires and would manifest but for the activation of ALR. The majority does not explain what remedy is furthered by giving a DUI offender 30 more days to drive drunk before revoking his license.

The majority states correctly that the temporary permit is necessary to protect a motorist's rights to due process: as a driver's license is a constitutionally protected interest, it cannot be taken without due process. See, *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586, 20 L. Ed. 2d 90 (1971); *State v. Michalski*,

221 Neb. 380, 377 N.W.2d 510 (1985). Indeed, the stated remedial goal of ALR forces the State into a Hobson's choice: either stay true to the goal of getting drunk drivers off the road, issue no temporary permit, and violate the motorist's right to due process; or issue a temporary permit, cast grave doubts upon the claim that ALR has any remedial qualities, and trigger double jeopardy protection. Either way, this court must sacrifice a constitutional guarantee to uphold a statute whose remedial purpose is weak and whose indicia of punitive purpose are strong. The Legislature's provision for procedural protections does not cancel out the bluntly stated purpose of furthering a deterrent objective in plain violation of *Halper* and the Fifth Amendment.

### Appearing to Qualify as Punishment

For the Legislature to excise its deterrent language from the statute would not remove the underlying deterrent purpose of the statute. *Halper* holds that a civil penalty should bear a rational relationship to the goal of compensating what the government has lost, and should not "[appear] to qualify as 'punishment' in the plain meaning of the word." 490 U.S. at 449. Even assuming the legitimacy of the remedial purpose of ALR, this penalty still appears to qualify as punishment in ways that overwhelm the goal of protecting the public from drunk drivers.

*Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993), in addition to clarifying the controlling language of *Halper*, provides an exemplary list of characteristics of punishment that shows that ALR indeed appears to qualify as punishment. In *Austin*, the U.S. Supreme Court found civil forfeiture under certain federal statutes to qualify as "punishment" on the basis of these characteristics. The majority's rejection of *Austin*, however, averted any need to address those characteristics in its opinion.

The first *Austin* characteristic is the historical understanding of the sanction in question. The *Austin* Court considered whether, at the time the Eighth Amendment was ratified, civil forfeiture "was understood at least in part as punishment." 509 U.S. at 610-11. Notably, the Court consistently qualified the

requirement of a historical understanding in punishment to be no more than "at least in part." *Id.* at 610 and 619. That some remedial purposes may have been advanced by civil forfeiture did not, for the *Austin* Court, negate the fact that forfeiture also advanced concurrently a punitive purpose.

The U.S. Supreme Court's recognition of historical concurrent remedial and punitive purposes is important to ALR analysis. Unlike forfeiture, ALR as a sanction is not replete with centuries of common-law history. Although this court has found that revocation of a driver's license under the point system is designed to protect the public, *Durfee v. Ress*, 163 Neb. 768, 81 N.W.2d 148 (1957), our case law does not address whether ALR is historically understood, at least in part, as punishment. Revocation under the point system, however, is not in question under ALR.

Notwithstanding ALR, DUI offenders historically have been subject to revocation through multiple mechanisms: the point system and judicial revocation under statutes criminalizing DUI. Neb. Rev. Stat. § 39-669.07(2) (Cum. Supp. 1992) (now codified at Neb. Rev. Stat. § 60-6,196(2) (Reissue 1993)). As ALR complements both mechanisms, the history of judicial revocation is as instructive as that of point system revocation. This court has not distinguished the purpose of judicial revocation from other instruments of punishment meted out for a DUI conviction. See, e.g., *Gembler v. City of Seward*, 136 Neb. 196, 285 N.W. 542 (1939) (finding city had power to punish DUI, where punishment included license revocation). License revocation for DUI has been imposed historically both to further remedial aims and to punish the offender.

The second *Austin* characteristic is the provision of an innocence defense in the statute providing for sanction. Such a defense serves to "focus the provisions on the culpability of the [defendant] in a way that makes them look more like punishment, not less." 509 U.S. at 620. This characteristic is relevant to Nebraska's ALR statutes. A motorist facing ALR has available only those defenses he would raise prior to or at his criminal trial. The motorist circumvents ALR entirely only by proving at an ALR hearing that he did not violate § 39-669.07 (now § 60-6,196), or that his arrest was unlawful for reasons

relating to Fourth Amendment criminal procedure. § 39–669.15(6)(c) (now § 60–6,205(6)(c)). Once imposed, ALR terminates prematurely only if the motorist prevails at his criminal trial or if the State decides not to prosecute. Neb. Rev. Stat. § 39–669.16(4) (Cum. Supp. 1992) (now codified at Neb. Rev. Stat. § 60–6,206(4) (Reissue 1993)).

The *Austin* Court next pointed to the fact that, in the example of the federal forfeiture statutes, Congress had tied forfeiture directly to the commission of certain crimes. Similarly, in § 39–669.15 (now § 60–6,205), the Legislature tied ALR directly to commission of the crime of DUI. ALR is triggered only by proof that DUI has been committed or, if the motorist refuses to submit to a sobriety test, by the arresting officer's reasonable belief that DUI has been committed. § 39–669.15 (now § 60–6,205(2) and (3)). The sanction is imposed only after the driver has been arrested, and its duration lengthens if the motorist's license has been previously revoked for the same crime. § 39–669.16 (now § 60–6,206(1)). That ALR is irrefutably linked to commission of a misdemeanor under the Nebraska Criminal Code, by plan and design of the Legislature, only strengthens the argument that ALR "appears to qualify as 'punishment.' "

ALR "appears to qualify as 'punishment' " from the words and operation of the statutes in more ways than *Austin* enumerates as characteristics of punishment. First, ALR can outlast the sentence resulting from the motorist's criminal trial. Were the trial judge to sentence a DUI first offender to probation or suspend the sentence, the motorist would incur a 60–day judicial revocation; yet, ALR would remain in effect for the full 90–day period notwithstanding the sentence. Were the trial judge to sentence a DUI second offender to probation or suspend the sentence, the motorist would incur a 6–month judicial revocation; yet, ALR would remain in effect for a full year. Given that the stated purpose of ALR is to remove drunk drivers from the road more swiftly than the criminal trial process might, it is difficult to understand how that purpose is furthered by *keeping* a motorist off the road after the criminal sentence ends.

Second, ALR limits the motorist's ability to obtain employment driving privileges pursuant to Neb. Rev. Stat. § 60-4,130 (Cum. Supp. 1992). An employment permit is available to any motorist whose license is revoked for offenses, including drunken driving, enumerated in the point system. ALR renders the employment permit statute inapplicable to only DUI offenders, without showing as much "remedial" concern for drivers whose habits are less publicly reviled, but no less dangerous. Motorists whose licenses have been revoked under the point system for violations, including willful reckless driving, habitually speeding more than 10 miles per hour over the speed limit, and *motor vehicle homicide*, can obtain an employment permit immediately upon revocation of their driver's licenses. Neb. Rev. Stat. § 60-4,129(1) (Cum. Supp. 1992). Currently, under § 60-6,206(2), a first-time DUI offender, however, cannot obtain an employment permit for the first 30 days of revocation; for any subsequent DUI offense, the motorist cannot obtain an employment permit at all (previously 60 days under § 39-669.16(2)).

It is axiomatic that the State should have the same remedial interest in swiftly removing from the roads a motorist who drives recklessly enough times to incur revocation, or who kills another person as a result of grossly negligent or reckless driving, as it does in swiftly removing a first-time DUI offender. It is further axiomatic that dangerous speeding and reckless driving are committed in transit to and from work more commonly than is DUI. Yet, the Legislature returns to the roads all violators of the Nebraska Rules of the Road except drunk drivers.

This discrepancy can be explained only as an attempt to deter Nebraskans from driving drunk with the threat that motorists will lose the ability to drive to work or, if their employment requires a valid driver's license, their livelihoods. The motorist's loss of transportation to, from, and in the course of employment is particularly pernicious beyond Lincoln and Omaha and certainly in Nebraska's more rural counties, where public transportation is largely if not entirely unavailable. Even were it available, public transportation would be of little utility to a farmer or rancher for whom the use of a car or truck is

simply a practical necessity. While this sanction may well be appropriate within the confines of a criminal sentence imposed by a trial judge, its inclusion in an ostensibly remedial sanction absolutely makes ALR "[appear] to qualify as 'punishment.' "

Whether the cumulative impact of these punitive aspects of ALR is disproportionate either to the offense or to the costs to the State created by drunk driving is irrelevant to our determination of whether a sanction appears to qualify as "punishment" under *Halper*. Although in *Halper*, the civil sanction imposed was much greater than the actual costs of Halper's fraud, the Court did not articulate a "proportionality test" by which a sanction is punishment if it is greater than the offense. Rather, a sanction is punishment if it serves a deterrent purpose, which was true of the fine in *Halper* and which is true of the punitive aspects of ALR.

Proportionality analysis determines not whether punishment exists, but whether it is excessive; in fact, proportionality is used to determine whether the Eighth Amendment—the constitutional protection under which *Austin* arose—has been violated. See *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Given that, it is particularly disingenuous for the majority to adopt a line of Eighth Amendment analysis which is inapposite to Double Jeopardy Clause analysis, while rejecting the clarification of "punishment" in *Austin* (which never reached the proportionality question) merely because *Austin* is an Eighth Amendment case by legal taxonomy. The U.S. Supreme Court in *Halper* did not ask whether a sanction appears to qualify as punishment disproportionate to the offense, but whether it appears to qualify as punishment at all. In the case of ALR, that question should have been answered in the affirmative.

There is nothing unconstitutional per se in a sentence providing for lengthy license revocation, or for fines and imprisonment that, without violating the Excessive Fines Clause of the Eighth Amendment, make drunk driving a prohibitively expensive endeavor, nor in a criminal sentence that denies an employment permit to any DUI offender in Nebraska, irrespective of one's rural predilections or dependency upon a motor vehicle for one's livelihood. When these sanctions are

imposed as a condition of one singular punishment for one offense of DUI, such a punishment would not offend the Double Jeopardy Clause. What *is* unconstitutional per se is the imposition of any of these deterrent provisions under the auspice of "remedial sanctions" that can fairly be said to serve the purpose of punishment. The clearest holdings of *Halper*, ignored by the majority, distinguish retribution and deterrence from nonpunitive objectives and prohibit the former from creeping into the latter.

For even the most heinous crimes and the cruelest offenses, the State must concentrate its powers of punishment into a singular punitive effort. Under this court's interpretation of *Halper*, the State can deter its citizens from crime by inviting each concerned agency of the State in turn to unleash its powers upon an offender, each acting under the pretext of remedy, such that the offender never knows when his debt to society is finally paid in full. My dissent does not stand for the idea that the Legislature should surrender its war against drunk driving, but only that the casualties of this war must not include the Bill of Rights.

For these reasons, as well as the reasons articulated by Justice Gerrard in his dissent in *Hansen v. State, ante* p. 177, 542 N.W.2d 424 (1996), I dissent.

FAHRNBRUCH and GERRARD, JJ., join in this dissent.